1   Jeffrey K. Techentin (Pro Hac Vice)
    Kyle M. Zambarano (Pro Hac Vice)
2   ADLER POLLOCK & SHEEHAN P.C.
    One Citizens Plaza, 8th Floor
3   Providence, RI 02903
    Tel: (401) 274-7200
4   Fax: (401) 351-4607
    Jtechentin@apslaw.com
5   kzambarano@apslaw.com

6
    VALERIE M. WAGNER (State Bar No. 173146)
7   KIMBERLY A. DONOVAN (State Bar No. 160729)
    GCA LAW PARTNERS LLP
8   1891 Landings Drive
    Mountain View, CA  94043
9   Tel:  (650) 428-3900
    Fax: (650) 428-3901
10  vwagner@gcalaw.com
    kdonovan@gcalaw.com
11
    Attorneys for Defendants
12  greenBytes, Inc.

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15
    SUN MICROSYSTEMS, INC.,              No.   CV09-2745 RMW
16
            Plaintiff,
17                                       **MOTION TO DISMISS FIRST
            vs.                          AMENDED COMPLAINT**
18
    GREENBYTES, INC.,
19                                       HEARING:   October 30, 2009
            Defendant.                   TIME:   9:00 a.m.
20                                       DEPT:   Courtroom 6, 4th Floor
21                                       The Honorable Ronald M. Whyte
22

23

24

25

26

27

28

MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. CV 09 2745 RMW

# **TABLE OF CONTENTS**

Page No.

NOTICE OF MOTION ................................................................. 1

I.     INTRODUCTION AND FACTUAL BACKGROUND ............................... 2

       A.     greenBytes' Development of De-duplication ....................... 2

       B.     Sun's Misappropriation of Trade Secrets
              Concerning De-duplication ...................................... 3

       C.     Sun's Trademark Claims ......................................... 6

II.    SUMMARY OF ARGUMENT ........................................... 7

III.   ARGUMENT ..................................................... 8

       A.     Sun's Trademark Claims, Including Its Federal
              Trademark Claims, Fail to State a Claim upon
              Which Relief May Be Granted ................................... 9

              1.     Sun has not stated a plausible claim for
                     relief with respect to its trademark claims
                     because it has not adequately pled prior,
                     continuous use in commerce .............................. 9

                     a.     All of Sun's allegations of its "use"
                            of the ZFS mark are conclusory and
                            not entitled to an assumption of truth ........... 9

                     b.     The only inference that may be drawn
                            from Sun's non-conclusory, factual
                            allegations is that Sun did not continuously
                            use the ZFS mark in commerce prior to
                            October 31, 2007 ............................ 12

              2.     Sun had not stated a plausible claim for
                     relief with respect to its Trademark Claims
                     because it has pleaded conclusory, inconsistent
                     facts as to whether an affiliation and/or
                     relationship exists between Sun and greenBytes ....... 16

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

3.   Sun has not stated a plausible claim for
relief with respect to its Trademark Claims
because it has pleaded conclusory facts
based only on information and belief as to
whether greenBytes perpetrated fraud on
the USPTO ................................................................. 18

B.   Based on the failure to plead adequate federal
trademark claims, this Court lacks subject matter
jurisdiction over this case ........................................................ 20

C.   Suns' Trade Secret Claims Are Not Properly
the Subject of Supplemental Jurisdiction .............................. 20

1.   The Trade Secret Claims and The Trademark
Claims Do Not Share a Common Nucleus of
Operative Fact ........................................................... 20

2.   Alternatively, the Trade Secret Claims Should
Be Dismissed Because They Are Predominant ......... 32

3.   As A Further Alternative, the Trade Secret
Claims Should Be Dismissed Based on Sun's
Having Asserted the Trademark Claims Solely
in an Effort to Secure What it Perceives to be
a Favorable Forum ..................................................... 24

IV.   CONCLUSION ......................................................................................... 25

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1

**TABLE OF AUTHORITIES**

2

U.S. Supreme Court Cases                                                        Page No.

3

*Ashcroft v. Iqbal,*

4
        129 S.Ct. 1937 (2009) .................................................................  9, 12

5

*Bell Atlantic Corp. v. Twombly,*
        550 U.S. 544 (2007) .................................................................  8, 9, 12

6
*Conley v. Gibson,*

7
        355 U.S. 41 (1957) .................................................................  8

*United Mine Workers v. Gibbs,*

8
        383 U.S. 715 (1966) .................................................................  23

9

Other Court Cases

10

*Abouelhassan v. United States,*

11
        No. C 08-3774 RS, 2009 WL 942386 (N.D. Cal. Apr. 6, 2009)...................  8

12

*Brookfield Comms., Inc. v. West Coast Entm't. Corp.,*

13
        174 F.3d 1036 (9th Cir. 1999)....................................................  13

14

*Chance v. Pac-Tel Teletrac, Inc.,*
        242 F.3d 1151 (9th Cir. 2001) ....................................................  13

15

16

*Chiron Corp. v. Abbott Labs.,*
        156 F.R.D. 219 (N.D. Cal. 1994)  ................................................  18, 19

17

18
*Dept. of Parks and Recreation v. Bazaar Del Mundo, Inc.,*
        448 F.3d 1118 (9th Cir. 2006) ....................................................  10, 13

19

20
*Glazer Capital Mgmt. LP v. Magistri,*
        549 F.3d 736 (9th Cir. 2008) .....................................................   19

21

22
*Herman Family Revocable Trust v. Teddy Bear,*
        254 F.3d 802 (9th Cir. 2001).....................................................  20

23

*Highway Equip. Co. v. Feco, Ltd.,*

24
        469 F.3d 1027 (Fed. Cir. 2006)...................................................  22

25
*Johnston v. Lindauer,*
        No. 02:07-cv-01280-GEB-EFB, 2009 WL 2058579

26
        (E.D. Cal. July 14, 2009)........................................................  22, 23

27

*Kuba v. 1-A Agr. Ass'n,*

28
        387 F.3d 850 (9th Cir. 2004).....................................................  20

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

*Kuklachev v. Gelfman,*
    600 F.Supp.2d 437 (E.D.N.Y. 2009) ........................................................ 15

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) ............................................................... 8, 14

*Moss v. U.S. Secret Service,*
    572 F.3d 962, 2009 WL 2052985 (9th Cir. 2009) ................................ 9, 12

*O'Haire v. Napa State Hosp.,*
    No. C 07-0002 RMW (PR), 2009 WL 2447752 (N.D. Cal. Aug. 7, 2009) .. 8

*Org. for the Advancement of Minorities with Disabilities v. Brick Oven Rest.,*
    406 F. Supp. 2d 1120 (S.D.Cal. 2005) ......................................................... 23

*Reyes v. Kelleberg,*
    No. C-09-01553-RMW, 2009 WL 2723743 (N.D.Cal. Aug. 5, 2009) ......... 20

*Rubke v. Capitol Bancorp, Ltd.,*
    551 F.3d 1156 (9th Cir. 2009) ................................................................... 19

*Rudolph Int'l., Inc. v. Realys, Inc.,*
    482 F.3d 1195 (9th Cir. 2007) ................................................................... 15

*San Pedro Hotel Co. v. City of Los Angeles,*
    159 F.3d 470 (9th Cir. 1998) ............................................................... 22, 23

*Segoku Works Ltd. v. RMC Int'l, Ltd.,*
    96 F.3d 1217 (9th Cir. 1996) ................................................................... 13

*Solarex Corp. v. Arco Solar, Inc.,*
    121 F.R.D. 163 (E.D.N.Y. 1988) ............................................................. 18, 19

*Summit Media LLC v. City of Los Angeles,*
    530 F. Supp. 2d 1084 (C.D. Cal. 2008) ...................................................... 21

*Taiwan Semiconductor Mfg. Co., Ltd. v. Semiconductor Mfg. International Corp.,*
    No. C-03-5761MMC, 2004 WL 5212448 (N.D. Cal. April 21, 2004) ... 23, 24

*Telewizja Polska USA, Inc. v. Echostar Satellite Corp.,*
    No. 02 C 3293, 2004 WL 2367740 (N.D.Ill. Oct. 15, 2004) ...................... 15

*Universal Comms. Sys., Inc. v. Lycos, Inc.,*
    478 F.3d 413 (1st Cir. 2007) ................................................................... 19

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

<u>Federal Rules and Statutes</u>                                          <u>Page No.</u>

Fed. R. Civ. P. 8(a)(2) ........................................................................  9

Fed. R. Civ. P. 9(b) ..........................................................................  20

Fed. R. Civ. P. 12(b)(1) ....................................................................  8, 9

Fed. R. Civ. P. 12(b)(6) ....................................................................  8

Fed. R. Civ. P. 15(a)(1) ....................................................................  6

15 U.S.C. §§ 1051. ...........................................................................  6

15 U.S.C. §§ 1057(b). .......................................................................  13

15 U.S.C. § 1064 ..............................................................................  18

15 U.S.C. § 1111 ..............................................................................  10

15 U.S.C. § 1125(a) ..........................................................................  16

15 U.S.C. § 1127 ..............................................................................  11

28 U.S.C. § 1331 ..............................................................................  20

28 U.S.C. § 1364(c)(4) ......................................................................  24

28 U.S.C. § 1367 ..............................................................................  20

28 U.S.C. § 1367(a) ..........................................................................  passim

28 U.S.C. § 1367(c) ..........................................................................  8, 24, 25


<u>Other</u>

37 C.F.R. 2.101  ...............................................................................  7

Tiki Dare and Harvey Anderson,
*Passport Without A Visa: Open Source Software Licensing and Trademarks*,
      2 Int'l. In-House Counsel J. 963 (2009) .......................................  11

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 30, 2009, at 9:00 a.m., or as soon thereafter as it may be heard by this Court, in the courtroom of the Honorable Ronald M. Whyte, District Judge of the United States District Court for the Northern District of California, located in Courtroom 6, Fourth Floor, 280 South First Street, San Jose, CA 95113, Defendant greenBytes, Inc. ("greenBytes") will, and hereby does, move for this Court for an order to dismiss the First Amended Complaint of Plaintiff Sun Microsystems, Inc. ("Sun") in this action. greenBytes seeks dismissal of Sun's entire First Amended Complaint on the grounds that Sun fails to state a claim upon which relief may be granted with respect to its trademark claims, causing a lack of subject matter jurisdiction as to the entire action. Further, Sun's trade secret claims are not properly the subject of supplemental jurisdiction and should be dismissed.

Sun's First Amended Complaint should be dismissed in its entirety. In a transparent rush to the Courthouse, Sun originally sued greenBytes, Inc. for strictly declaratory relief, seeking to force greenBytes to litigate in this Court its claims against Sun concerning Sun's wrongful use of greenBytes' confidential information. After realizing that it had failed to allege any legitimate basis for federal jurisdiction, Sun quickly amended its complaint to add trademark claims to provide a jurisdictional "hook" for having this case – essentially one concerning the misappropriation of trade secrets and breach of a nondisclosure agreement – heard in federal court. But in its haste to interject federal claims into an otherwise state-court appropriate dispute, Sun failed to state any legitimate trademark claims and those claims should be dismissed.

Moreover, despite Sun having now affixed purported Lanham Act claims to its original declaratory judgment action, this Court continues to lack supplemental jurisdiction over the trade secret-related claims that overwhelmingly predominate in this action. Those trade secret-related claims bear no factual nexus to the purported trademark claims and therefore cannot be the subject of supplemental jurisdiction in this Court, regardless of whether Sun's trademark claims can withstand appropriate judicial scrutiny. This Court should dismiss all of

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1   the trademark-related claims for failure to state a claim, and the remaining claims for want of

2   subject matter jurisdiction.  Simply, this dispute should not be in federal court.

3   **I.**    **Introduction and Factual Background**

4      **A.**    **greenBytes' Development  of De-duplication**

5       greenBytes is a technology company located in Rhode Island.  Since its founding in

6   2007, greenBytes has devoted its talented and experienced computer engineering team

7   exclusively to the development of more energy efficient and higher functioning data storage

8   appliances.  greenBytes has developed, and has begun to market, a new generation of storage

9   appliances that will maximize data storage space while minimizing energy consumption

10   through, *inter alia*, a revolutionary approach to data de-duplication.  "De-duplication" refers to

11   the ability of a storage appliance to eliminate copies of data, so that individual pieces of data

12   are stored only once on a system, thus maximizing the storage capacity of the system.

13   Specifically, greenBytes' proprietary software provides real-time ("synchronous"), block level,

14   scalable de-duplication.[1]

15      greenBytes opted to use the ZFS file system, which it obtained pursuant to an open

16   source license (the "Common Development and Distribution License," or "CDDL"), as the file

17   system for its data storage appliances.[2]  The CDDL is a version of an "open source" license

18   agreement.  As with other such agreements, the CDDL acts as a royalty-free, perpetual

19   copyright (and, in the case of the CDDL, patent) license that effectively allows anyone to

20   download the source code for the software products that are the subject of the license and to

21   copy and/or modify that code however the user sees fit.  In return, users are obliged, when the

22   modified source code is distributed in executable form, to make the modified source code

23   available to the public.  CDDL ¶ 3.1.

24      Pursuant to and in compliance with the CDDL, greenBytes has designed its proprietary

25

---

26   [1]   greenBytes' revolutionary advance in de-duplication focuses on a streamlined algorithm for the identification of duplicates, thus minimizing the downsides for synchronous de-duplication which, in the current state of the art,

27   is too processor-intensive to be performed on large-scale data operations.  greenBytes' patent application for this process is pending with the United States Patent and Trademark Office.

28   [2]   Despite its reference to and reliance upon it, Sun did not attach a copy of the CDDL to its complaint.  A copy is attached to the Declaration of Jeffrey K. Techentin ("Techentin Declaration") as **Exhibit A**.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1   software, including the software that provides advanced de-duplication, to interoperate with

2   ZFS, and in doing so altered source code within ZFS.  Pursuant to the CDDL, when

3   greenBytes distributes product that incorporates the modified ZFS source code, greenBytes

4   will be obliged to make the modified source code available to the public.  Its proprietary code,

5   however, will remain proprietary and need not be made public.

6       **B.    Sun's Misappropriation of Trade Secrets Concerning De-duplication**

7       greenBytes and Sun have had extensive interaction since greenBytes' founding in 2007.

8   Initially, greenBytes intended to purchase and use Sun hardware for its data storage

9   appliances.  Sun had greenBytes enter into an original equipment manufacturer ("OEM")

10  agreement to facilitate the purchase and resale of Sun hardware.  And again, after

11  consideration of a variety of file systems, such as Linux, greenBytes opted to use ZFS as the

12  file system for its products, and therefore entered into the CDDL, essentially a contract

13  between greenBytes and Sun, which permitted greenBytes to obtain, use, modify, and

14  distribute ZFS on its data storage appliances.

15      In addition to these contracts and the various communications attendant to them, in

16  Spring 2008 Sun contacted greenBytes to inquire about the de-duplication process that

17  greenBytes had developed, presumably because it was interoperable with ZFS.  To facilitate

18  the discussions between Sun and greenBytes, Sun prepared and asked greenBytes to enter into

19  a nondisclosure agreement ("NDA") to govern the disclosure of confidential information

20  concerning greenBytes' products.  greenBytes did so.

21      Sun represented that it was interested in greenBytes' de-duplication process because

22  Sun intended to develop de-duplication for ZFS and wanted to see if greenBytes' solution

23  might be of use to Sun.  In June 2008 one of Sun's "Distinguished Engineers" and one of the

24  primary architects for Sun's ZFS development, Bill Moore, traveled to greenBytes' office in

25  Rhode Island to see the de-duplication process for himself.  Apparently impressed with what

26  he saw, Mr. Moore invited key members of the greenBytes development team to Sun's Menlo

27  Park headquarters to present greater details about the de-duplication process to Sun's ZFS

28  development team.  During meetings that spanned two days in September 2008, greenBytes

MOTION TO DISMISS FIRST AMENDED COMPLAINT                                    3
CASE NO. CV09-2745 RMW

1  explained the de-duplication process in detail and the parties discussed a potential business

2  relationship between Sun and greenBytes that would provide Sun the de-duplication

3  functionality that it had developed.

4       During the course of the discussions, Sun repeatedly represented that, while

5  developing de-duplication for ZFS was a priority item for Sun, Sun had not yet staffed the

6  issue and had not performed any material work on the project.  Ultimately, those discussions

7  did not lead to the consummation of such a business relationship.  Instead, Sun apparently

8  decided that, having learned the details of greenBytes' de-duplication process, it could build on

9  that information by ***having the same engineers who attended the meetings with greenBytes***

10  design Sun's "own" de-duplication process.  Sun did not tell greenBytes that it intended to do

11  so.

12       This case concerns the extent to which Sun has misappropriated and misused

13  greenBytes' confidential information communicated during the course of the parties'

14  negotiation of a potential business arrangement.[3]

15       Alarmed by the fact that Sun had devised a de-duplication process functionally

16  equivalent to greenBytes' in an incredibly short span of time, and that it had used the very

17  engineers to whom greenBytes had disclosed its process to develop the project, greenBytes

18  contacted Sun in May 2009 to seek information about whether Sun had misused greenBytes'

19  confidential information.  Sun, through its in-house counsel, claimed that it had investigated

20  the situation and flatly denied that Sun had misused any confidential information, but refused

21

22

23  [3]  greenBytes first learned that Sun had done any work on de-duplication for ZFS during Spring 2009, when Jeff

24  Bonwick – the Sun Distinguished Engineer who, along with Bill Moore, is primarily responsible for ZFS, and
   who attended the meetings with greenBytes in September 2008 – responded to an e-mail on a Sun website about

25  whether de-duplication for ZFS was in the works with the following:

            Yes -- dedup is my (and Bill's) current project.  Prototyped in December.  Integration this
26             summer.  I'll blog all the details when we integrate, but it's what you'd expect of ZFS dedup --
            synchronous, no limits, etc.

27    According to this post, Sun had moved from having done virtually no work on de-duplication, as it had

28  represented in September 2008, to having reached a working prototype for fully scalable, synchronous de-
   duplication in ZFS in little more than three months. *See* First Amended Complaint Exhibit 4 at 15.

MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. CV09-2745 RMW

4

1   to provide any details about what Sun had done that might satisfy greenBytes as to the

2   lawfulness of Sun's development of a de-duplication process.

3          In response, greenBytes reiterated its request for information and informed Sun that

4   unless Sun committed to providing the requested information in a timely fashion, greenBytes

5   would bring suit in Rhode Island state court.  greenBytes even provided Sun with a draft

6   complaint setting forth the claims that greenBytes contemplated bringing against Sun to

7   vindicate its rights.  Rather than providing any further response to greenBytes, and thereby

8   potentially avoiding litigation altogether, Sun cobbled together a complaint seeking

9   declaratory relief and filed it in this Court.  *See generally* Complaint [Docket No. 1].  Sun's

10  Complaint sought nothing more than a declaration that it had not acted unlawfully under the

11  various theories set forth in the draft complaint sent by greenBytes.  Because Sun filed its

12  Complaint on the Friday before the Tuesday deadline in greenBytes' letter, Sun succeeded in

13  being the first to bring suit.

14         The next week, greenBytes brought suit in Rhode Island Superior Court seeking

15  redress, including injunctive relief, for Sun's misappropriation of trade secret information.  In

16  addition to the filing and service of greenBytes' Complaint, substantial litigation took place in

17  Rhode Island, including:  pleading and amendments thereto, a motion for preliminary

18  injunctive relief, associated briefing, extensive testimony, post-hearing briefing, and various

19  arguments. Ultimately, the Rhode Island Superior Court (1) found that Rhode Island was a

20  proper jurisdiction for the case because the forum selection clauses relied on by Sun were

21  inapplicable to the dispute; (2) denied the request for preliminary injunctive relief; (3) set a

22  schedule for expedited discovery and related matters for a permanent injunction hearing to be

23  held in October 2009; and (4) after further argument and briefing on the first-to-file issue,

24  elected to stay the Rhode Island action pending the outcome of this case.

25         The Rhode Island matter is currently stayed, although the Order staying the action

26  provides that the Court will entertain a motion for relief from that stay in the event that this

27  case does not proceed expeditiously.  Techentin Declaration at **Exhibit B**.  The Court's *sua*

28  *sponte* decision in that regard is presumably based on the fact that Sun's potential release of its

MOTION TO DISMISS FIRST AMENDED COMPLAINT          5
CASE NO. CV09-2745 RMW

own ZFS de-duplication process appears imminent.  That fact also apparently underlies the Court's earlier decision scheduling a hearing on permanent injunctive relief to be held in October 2009 (and likely provides insight into the Rhode Island Court's contemplation of what proceeding "expeditiously" may mean).  *Id.* at **Exhibit C**.

### C.     Sun's Trademark Claims

Sun's original Complaint was facially deficient with respect to subject matter jurisdiction.  Despite having noted that both Sun and greenBytes are Delaware corporations (Complaint at ¶¶ 7-8), Sun nevertheless asserted diversity jurisdiction as the basis for bringing suit in federal court.  *Id.* at ¶ 9; Civil Cover Sheet [Docket No. 1-5].  Confronted with this problem by greenBytes' counsel, Sun opted not to voluntarily dismiss its improper complaint, but instead to amend its complaint pursuant to Fed. R. Civ. P. 15(a)(1) to assert some other basis for federal jurisdiction.

It did so by adding allegations relating to its purported trademark rights in the abbreviation "ZFS" and several claims related to its, and greenBytes', use of "ZFS," including claims brought under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. (the Sixth, Ninth, and Tenth Causes of Action).  These Lanham Act assertions constitute the only basis for original federal jurisdiction in the Amended Complaint.  *See* First Amended Complaint ("FAC") ¶ 10.

In an effort to create, literally, a federal case out of nothing, Sun asserts that there is a legitimate dispute over trademark rights in the marks "ZFS" and ZFS+[®] where none exists.  And to avoid admitting its knowledge that no genuine dispute exists, Sun elected to omit the most critical detail regarding Sun's and greenBytes' discussions of the ZFS+ mark from its Amended Complaint:  that the parties reached a full and complete settlement of any issues arising out of greenBytes' use of the mark.  Sun's claims, if it could assert any, would be barred by that settlement.[4]

---

[4]    This fact, although not set forth in Sun's Amended Complaint, is of central relevance to greenBytes' arguments of subject matter jurisdiction, as to which Sun bears the burden of proof.  *See* Part III.B-C, *infra*. Strikingly, Sun went into great detail about the discussions between Sun and greenBytes about the ZFS+ trademark (*see* FAC ¶¶ 30-31) without revealing this detail.  While Sun described how its counsel drafted an agreement to fully resolve the matter, and how greenBytes' counsel proposed changes to the agreement, Sun's allegations leave the matter there, omitting the critical fact that Sun's counsel ***accepted the proposed changes to***

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1    Aside from their complete settlement, Sun's trademark-based claims lack merit.

2    Although Sun has parroted the elements of various trademark claims, it has failed to allege

3    how, under the particular circumstances pertaining to ZFS, it ever used ZFS as a trademark

4    relating to a Sun (as opposed to any other open source developer's) product.  Additionally, a

5    greenBytes' use of ZFS+ was used with the full knowledge and acquiescence of Sun.  Sun

6    acknowledges that it knew of greenBytes' use of ZFS+ in May 2008, but did not complain to

7    greenBytes until October 2008.  FAC ¶ 30.  Moreover, Sun is a sophisticated company that

8    has set in place policies designed to protect its trademarks.  *See*, *e.g.*, FAC ¶ 33.  Sun must

9    have (and must have had) some method in place to monitor and enforce the use of those

10   marks.  If Sun actually asserted trademark rights in "ZFS," it should have applied to register it,

11   and it should have opposed the ZFS+ mark when it was published for opposition.  Sun admits

12   that it knew of the ZFS+ mark in May 2008 (FAC ¶ 30); the period for opposing the

13   registration ran until May 22, 2008.  37 C.F.R. 2.101.  Yet Sun did not apply for its own

14   registration of "ZFS," oppose the registration of ZFS+, or take any other timely action.

15   **II.    <u>Summary of Argument</u>**

16   Sun has asserted ten causes of action.  Broadly, the first five causes of action seek

17   declaratory relief to the effect that Sun has not acted illegally with respect to confidential,

18   trade secret information communicated to it by greenBytes (collectively, the First through

19   Fifth Causes of Action are herein referred to as the "Trade Secret Claims").  The last five

20   causes of action seek affirmative relief for greenBytes' use of the mark ZFS and/or ZFS+ and

21   include Sun's Lanham-Act claims (collectively, the Sixth through Tenth Causes of Action are

22   herein referred to as the "Trademark Claims").  Federal jurisdiction, if any is to be found in

23   Sun's complaint, derives exclusively from the Lanham Act allegations.  Without the

24   Trademark Claims, there is no basis for this Court to exercise jurisdiction over Sun's other

25

26   *the settlement agreement and, in writing, instructed greenBytes' counsel to have the agreement signed by*
     *greenBytes*.  Techentin Declaration at ¶ 6 and **Exhibit F**.  Less than three hours later, Sun's counsel called

27   greenBytes' counsel to state that because of the pending dispute regarding trade secret issues, Sun would not
     proceed to sign the settlement agreement and that greenBytes should not bother completing the paperwork.  *Id.* at

28   ¶ 6.  In other words, Sun reneged on its agreement – apparently so that it could try to shoehorn any dispute into
     federal court at its option.

MOTION TO DISMISS FIRST AMENDED COMPLAINT                    7
CASE NO. CV09-2745 RMW

1    claims.

2         Sun's First Amended Complaint should be dismissed in its entirety because it has

3    failed to state a claim under the Lanham Act.  Accordingly, there is no supplemental

4    jurisdiction under 28 U.S.C. § 1367(a).  Moreover, because the Trade Secret Claims and the

5    Trademark Claims do not share a common nucleus of operative fact, the Trade Secret Claims

6    are not the proper subject matter of supplemental jurisdiction.  Finally, and alternatively, two

7    considerations justify this Court exercising its discretion under 28 U.S.C. § 1367(c) and

8    declining to exercise jurisdiction over those claims:  first, the Trade Secret Claims so

9    predominate in this case that the exercise of federal jurisdiction is unwarranted, and second,

10   because the Lanham Act claims asserted by Sun constitute transparent forum shopping, the

11   Court should decline to hear the non-federal claims.

12   **III.**    **Argument**

13        Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint, and/or

14   certain claims within a complaint, may be dismissed for failure to state a claim upon which

15   relief may be granted.  In ruling on a 12(b)(6) motion, this Court must accept well-pled facts

16   as true and draw all reasonable inferences in favor of the plaintiff.  *O'Haire v. Napa State*

17   *Hosp.*, No. C 07-0002 RMW (PR), 2009 WL 2447752, *1 (N.D. Cal. Aug. 7, 2009).  In

18   addition to the pleadings, this Court is permitted to consider documents necessarily relied on

19   in the Complaint so long as the authenticity of these documents is not contested.  *Lee v. City*

20   *of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Gone from this standard is the familiar,

21   but now "retire[d]," maxim that a claim should be dismissed on the pleadings only when "'it

22   appears beyond doubt that plaintiff can prove no set of facts in support of his claim which

23   would entitle him to relief.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007)

24   (abrogating in part *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

25        Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a complaint may be

26   dismissed for lack of subject matter jurisdiction.  The party seeking to invoke this Court's

27   jurisdiction, in this case Sun, bears the burden of establishing subject matter jurisdiction.

28   *Abouelhassan v. United States*, No. C 08-3774 RS, 2009 WL 942386, *2 (N.D. Cal. Apr. 6,

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

MOTION TO DISMISS FIRST AMENDED COMPLAINT          8
CASE NO. CV09-2745 RMW

2009).  Both the pleadings and extrinsic evidence separate and apart from the pleadings may

be considered on a Rule 12(b)(1) motion.  *Id.*

### A.   Sun's Trademark Claims, Including Its Federal Trademark Claims, <u>Fail to State a Claim upon Which Relief May Be Granted.</u>

1.   Sun has not stated a plausible claim for relief with respect to its trademark claims because it has not adequately pled prior, continuous use in <u>commerce.</u>

Sun's Trademark Claims must contain "a short and plain statement of the claims

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  According to the United

States Supreme Court recent announcements in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007) and then *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the emphasis now lies with the

pleader's affirmative obligation to "show[] that the pleader is entitled to relief."

To be entitled to relief, a party must set forth fact-based, non-conclusory allegations

supporting "a claim for relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see also*

*Moss v. U.S. Secret Service*, 572 F.3d 962, 2009 WL 2052985, *12 (9th Cir. 2009).  The

plausibility analysis employs a two step process:  first, a court must set aside all conclusory

allegations; and second, a court must determine whether the remaining factual allegations give

rise to a plausible inference of liability.  *Iqbal*, 129 S.Ct. at 1950; *see also Moss*, 572 F.3d at

____, 2009 WL 2052985 at *12.

a.   All of Sun's allegations of its "use" of the ZFS mark are <u>conclusory and not entitled to an assumption of truth.</u>

The initial step is to identify and set aside those conclusory allegations in the pleadings

that are not entitled to the assumption of truth.  *Iqbal*, 129 S.Ct. at 1950.  Any "naked assertion

devoid of further factual enhancement" is deemed conclusory.  *Id.* at 1949 (quoting *Twombly*,

550 U.S. at 557).  Although the paradigmatic example of a conclusory allegation is the

pleading of a legal conclusion, allegations need not focus on an element of a legal claim to be

disregarded as conclusory.  *See id.* at 1949; *Twombly*, 550 U.S. at 555 (stating that a court is

"not bound to accept as true a legal conclusion couched as a factual allegation").

Following *Iqbal* and *Twombly*, this Court should not presume it to be true that ZFS

MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. CV09-2745 RMW

9

was/is a trademark.[5]  For a mark to be a trademark requires a particular form of use, and as

plaintiff, Sun is obliged to plead the relevant facts.  It has not done so.  Sun alleges that it has

"used" the ZFS mark, but utterly fails to explain the manner and nature of Sun's purported use

of that mark.  While Sun goes to great lengths to explain the ZFS product, the product's

performance capabilities, and accolades the product has received (*see* FAC ¶¶13-17), the

allegations in paragraphs 13, 32, 33, and 37 all merely reference Sun's use of the ZFS mark

without further explanation of how Sun used that mark.  This Court is asked to take Sun's

word for it that Sun used the ZFS mark ***as a trademark***.  These allegations are conclusory and,

therefore, they are not entitled to a presumption of truth.

The allegations of use of the ZFS mark in paragraph 33 illustrate this conclusory

nature.  First, Sun alleges that it "has continuously used the trademark ZFS[TM] since at least as

early as September 14, 2004 for its file system technology."  "Continuous use" is a term of art

in trademark law, and, therefore, this allegation offers a legal conclusion that cannot assist Sun

in meeting its pleadings burden.[6]  Next, Sun alleges that it currently "maintains on its website

at http://www.sun.com/suntrademarks/ a list of its trademarks where Sun claims ownership of

the ZFS trademark."  Conspicuously absent from this allegation is any specific indication of

when Sun first listed the ZFS trademark on this website.[7]  There is no allegation that Sun

asserted ZFS as a trademark on its website any point prior to Sun alleging trademark rights in

this litigation.  Moreover, the listing of the ZFS mark on a website does not illustrate how Sun

used that mark in commerce.  Obviously, Sun could list any number of "marks" on a webpage,

but the listing of a mark, by itself, would not create any trademark rights.  Sun also alleges that

it maintains (present tense) another website "devoted to" the ZFS product without any

---

[5]    Sun puts the rabbit in the hat, alleging that ZFS is a trademark, even referring to the mark as "ZFS[TM]"
throughout its pleadings.  Whether or not a particular term is a trademark, however, is a legal conclusion; indeed,
one that is at the heart of whether Sun can successfully challenge greenBytes' presumptively valid trademark rights
in the ZFS+ mark.  Furthermore, in its zeal to assert trademark rights in this term, Sun even used "ZFS®" in its
original complaint, despite never having applied to register such a mark with the USPTO.  Its use of the ® symbol
was in clear violation of 15 U.S.C. § 1111.

[6]    *See Dept. of Parks and Recreation v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1125-26 (9th Cir. 2006)
(requiring proof "that its use of the marks was continuous and not interrupted" as part of a claim for priority of use
over a previously-registered trademark).

[7]    *See* Part II.A.1.b. *infra*, discussing the prior versions of this website that do not list ZFS as a Sun trademark.

MOTION TO DISMISS FIRST AMENDED COMPLAINT                                              10
CASE NO. CV09-2745 RMW

1    explanation whatsoever.

2         In this context it is important to recognize, as Sun alleges, that ZFS is an open-source

3    project, where the source code for the project is freely available to anyone in the world who is

4    willing merely to abide by the terms of the applicable license – a license that is royalty free

5    and essentially requires only that, under specified circumstances, modifications to the code

6    must be made available to the public.  Thus anyone with a computer connected to the internet,

7    whether an individual or a business, anywhere in the world, can download ZFS from Sun – or

8    from any other entity that has made a version of the code available publicly – and then modify

9    the code however he, she, or it desires.  And if the modified ZFS code is distributed, the

10   license requires that it, too, be made available to the public.  If the product is successful, the

11   cycle goes on and on, as it has, for example, with Linus Torvalds' Linux project.

12        The natural, expected, and presumably hoped-for result is that there are soon multiple

13   "sources" for ZFS, not just Sun.  But a mark, to function as a trademark, must be identified

14   with a single source for the goods.  15 U.S.C. § 1127 (defining "trademark" as a mark used "to

15   identify and distinguish his or her goods, including a unique product, from those manufactured

16   or sold by others and to indicate the source of the goods, even if that source is unknown.").

17   While Sun might, or might not, maintain an "official" Sun version of the software (and it does,

18   describing it on the website www.sun.com/software/solaris/zfs.jsp as "Solaris$^{®}$ ZFS"), the idea

19   behind open source is that other implementations may be equal to or better than the original,

20   depending upon a particular user's needs.  And with respect to the critical question for any

21   trademark usage for a term such as ZFS, the term ZFS itself ceases in any sense to be

22   identified with a single source of the goods.  ZFS, as an open source project, is not a

23   trademark, but is rather a descriptive term referring to a class of goods available from a variety

24   of sources.  As Sun's trademark counsel has explained,

25        The point of using an open source license is to allow the underlying software to
          be modified and redistributed, possibly through many generations of
26        modification and distribution. If you start with a piece of software named Pure,
          after one modification, is the resulting software still Pure? More over, would
27        users still consider it "Pure" - no doubt it would depend on the modifications.

28   Tiki Dare and Harvey Anderson, *Passport Without A Visa: Open Source Software Licensing*

MOTION TO DISMISS FIRST AMENDED COMPLAINT                                    11
CASE NO. CV09-2745 RMW

*and Trademarks*, 2 Int'l. In-House Counsel J. 963, 965 (Winter 2009). While individual versions of ZFS might be labeled so as to associate them with a "source" of goods, for example Sun's Solaris® ZFS referenced on www.sun.com/software/solaris/zfs.jsp, the bare acronym ZFS is not in any sense a trademark. Sun's mere allegations of "use" without any explanation or amplification cannot make it "plausible" that Sun had any interest in the term *as a trademark*.

This Court must disregard all references in the Amended Complaint to Sun's use of the ZFS mark, as they run afoul of the *Twombley*/*Iqbal* mandate that conclusory allegations not be afforded the presumption of truth. Sun is required to plead a specific factual basis for its allegation that it used the ZFS mark. Its failure to do so is fatal to its Trademark Claims.

> b.   The only inference that may be drawn from Sun's non-conclusory, factual allegations is that Sun did not continuously use the ZFS mark in commerce prior to October 31, 2007.

Turning to the second step in the *Iqbal* analysis, once the conclusions are set aside, the only allegations that should remain are documentary, non-conclusory factual allegations. From these factual allegations a finder of fact must be able to draw a *plausible* inference of liability, rather than a mere *possible* inference of liability, in order for the claim to survive. *Iqbal*, 129 S.Ct. at 1949; *see also Moss*, 572 F.3d at ____, 2009 WL 2052985 at *12. Sun in this instance does not offer sufficient non-conclusory factual allegations to support a plausible inference of Sun's continuous use of the ZFS mark prior to October 31, 2007.

The *Iqbal* standard requires a court to analyze the remaining factual allegations in the pleadings and to draw two inferences – the claimant's proffered inference and the "obvious alternative" inference. *Iqbal*, 129 S.Ct. at 1951-52. Comparing the two alternate inferences, if the "obvious alternative" inference is "more likely" than the claimant's proffered inference, then claimant's proffered inference is considered, at best, merely possible. *Id.* at 1951. If, however, the "obvious alternative" inference is as likely or less likely than the claimant's proffered inference, then claimant's proffered inference is plausible. *See id.* at 1951-52.[8]

---

[8]   Factual allegations do not give rise to a plausible inference of unlawful conduct when they are more consistent with lawful activity. *Iqbal*, 129 S.Ct.. at 1950 (describing the more-likely inference in *Twombly*).

MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. CV09-2745 RMW

12

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1     As alleged by Sun, greenBytes registered the "ZFS+" trademark with the United States

2   Patent and Trademark Office after first using the ZFS+ trademark on October 31, 2007.  FAC

3   ¶ 32.  In turn, Sun has not alleged that it ever registered the ZFS mark.  Because the

4   registration of a mark creates a legal presumption of valid trademark rights, greenBytes, rather

5   than Sun, is capable of establishing a prima facie evidence of its ownership of a valid and

6   protectable trademark.  15 U.S.C. 1057(b); *see also Brookfield Comms., Inc. v. West Coast*

7   *Entm't. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

8     Sun consequently must overcome greenBytes' prima facie evidence by proving that

9   Sun is entitled to a priority of use because it was "the first to actually use the mark in the sale

10  of goods."  *Segoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996).  The

11  Lanham Act speaks of "use in commerce," rather than mere "use."  *Chance v. Pac-Tel*

12  *Teletrac, Inc.*, 242 F.3d 1151, 1157 (9th Cir. 2001) (citing 15 U.S.C. 1127).  "Use in

13  commerce" has been defined as a "bona fide sale" that is "followed by activities proving a

14  continuous effort or intent to use the mark."  *Id.*  These post-sale activities constitute

15  continuous use if they are "sufficiently public to identify or distinguish the marked good in an

16  appropriate segment of the public mind as those of the adopter of the mark."  *Dept. of Parks*

17  *and Recreation v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006).  A totality of

18  circumstances is to be analyzed to determine whether a mark is used in commerce.[9]

19    Turning to the First Amended Complaint, Sun's only allegations of continuous use in

20  commerce are the conclusory allegations of "use" set forth above.  Nowhere does Sun allege

21  an act that constitutes the equivalent of a "bona fide sale" of this open source software.  Nor

22  does Sun explain its public, post-sale activities designed to identify and distinguish the

23  product known as "ZFS" – as opposed to any other ZFS system made and distributed by other

24  people or entities under the open source license – as Sun's product.  Free to allege any number

25  of facts fitting within the "totality of circumstances" related to Sun's use of the ZFS mark, Sun

26

27  _____

28  [9]    Some of these circumstances include "the genuineness and commercial character of the activity," "the scope of the non-sales activity relative to what would be a commercially reasonable attempt to market the [good]," and "the degree of ongoing activity of the holder to conduct the business using the mark."  *Chance*, 242 F.3d at 1159.

MOTION TO DISMISS FIRST AMENDED COMPLAINT                    13
CASE NO. CV09-2745 RMW

1    alleges zero circumstances in that regard.  Sun's allegations, to the extent they reference ZFS

2    at all, focus exclusively on the product, at the expense of any allegations related to how the

3    ZFS mark was used in conjunction with that product.  *See* FAC ¶¶ 13-17.  There is simply

4    nothing from which this Court may draw an inference of continuous use of the ZFS mark.

5            In turn, the obvious alternative inference – *i.e.*, that Sun did not use the ZFS mark in

6    commerce prior to October 31, 2007 – is supported by documentary evidence necessarily

7    relied on by Sun in its Amended Complaint.  *See Lee v. City of Los Angeles*, 250 F.3d 668,

8    688 (9th Cir. 2001) (stating a district court may consider documents outside the complaint if

9    their "authenticity is not contested and the plaintiff's complaint necessarily relies on them.").

10   Sun references – and relies on – its website http://www.sun.com/suntrademarks/ in its

11   allegation that it currently claims public ownership of the ZFS mark, but Sun fails to state

12   when it first included reference to the ZFS mark on this website.[10]  FAC ¶ 33.  Sun presents

13   this allegation strictly in the present tense ("maintains" and "claims"), despite the fact that

14   Sun's continued use of the ZFS mark must pre-date October 31, 2007 in order to have any

15   priority over greenBytes' trademark registration.  Sun's reliance on this website in this specific

16   context, therefore, is not probative of Sun's use of the ZFS mark during the relevant time

17   period.  And, as it turns out, Sun's failure to plead a date with respect to its inclusion of the

18   ZFS mark on this website speaks volumes.

19           The prior versions of Sun's website demonstrate that Sun did not continuously use the

20   ZFS mark prior to October 31, 2007.  According to the records available through the website-

21   archiving, publicly-available www.archive.org, a website devoted to preserving prior versions

22

23

24

25

26   _____

     [10]   To the extent Sun couples the allegation related to this website with its conclusory allegation of use dating
27   back to "at least as early as September 14, 2004" by building the two separate and distinct allegations into the
     same paragraph in the First Amended Complaint, that pairing should not be read as stating or implying that the
28   website's reference to the ZFS mark dates back to September 14, 2004.  As the history of this website
     demonstrates, Sun did not include a reference to the ZFS mark on this website as of January 27, 2008.

     MOTION TO DISMISS FIRST AMENDED COMPLAINT                                                          14
     CASE NO. CV09-2745 RMW

1   of websites,[11] the ZFS mark was not listed on this website at any point prior to October 31,

2   2007, and was not even on the page as late as January 27, 2008, the last date for which an

3   archived version of the page is available.   *See* Techentin Declaration at ¶ 5 and **Exhibits D-E**.

4   Prior to October 31, 2007, Sun clearly represented by omission to the world that it did not

5   assert trademark rights in the mark ZFS.  No other possible inference could have been drawn

6   from Sun's website at the time.  As the reference to this website is the sole allegation in the

7   First Amended Complaint that Sun ever asserted such rights to the outside world, no other

8   inference can be drawn from the Amended Complaint except that Sun did not continuously

9   use the ZFS mark in commerce prior to October 31, 2007.

10       The other website relied on by Sun – http://www.sun.com/software/solaris/zfs.jsp,

11   which "is devoted to the ZFS™ technology," also supports the obvious alternative inference

12   that Sun did not continuously use the ZFS mark in commerce prior to October 31, 2007.

13   Indeed, that webpage is telling in that it does not appear to use "ZFS" as a trademark.  Instead,

14   the page appears to use "ZFS" (with no ™ symbol) as a descriptive term (referring to its file

15   system); Sun consistently refers to its own product as "Solaris ZFS."  *See Rudolph Int'l., Inc.*

16   *v. Realys, Inc.*, 482 F.3d 1195, 1197-98 (9th Cir. 2007) (stating descriptive terms generally are

17   not affirmed trademark protection, unless the user can demonstrate the mark has a "secondary

18   meaning" in the minds of consumers).

19       In the absence of any non-conclusory facts demonstrating Sun's continued use of the

20   ZFS mark prior to October 31, 2007, Sun relies on its website that strongly suggests that Sun

21   did not continuously use the ZFS mark prior to October 31, 2007.  The obvious alternative

22

---

23   [11]   Obviously, web-based content is dynamic, and the review of the ***present*** contents of a web page tells a viewer
24   nothing about its ***historical*** contents.  A nonprofit organization called the Internet Archive has built a tool to
      address this issue, available at www.archive.org.  Essentially, this is a web interface that allows a user to access
25   former versions of web pages as they had been cached by the Internet Archive at various points in time.  The
      archive crawls much of the web on a repeated basis, capturing the content of various pages and marking the cached
26   versions with a timestamp.
         Courts and litigants have recognized the utility and reliability of the content available through archive.org.
27   *See, e.g., Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, No. 02 C 3293, 2004 WL 2367740, at *6
      (N.D.Ill. Oct. 15, 2004); *Kuklachev v. Gelfman*, 600 F.Supp.2d 437, 454 n.6 (E.D.N.Y. 2009) (in explanation of
28   historic contents of website, court referred readers to www.archive.org "for archived images of earlier versions of
      the website").

MOTION TO DISMISS FIRST AMENDED COMPLAINT                    15
CASE NO. CV09-2745 RMW

1   inference is the only inference that can be drawn from Sun's Amended Complaint.  Sun,

2   therefore, has utterly failed to plead facts giving rise to a plausible inference of liability as to

3   Sun's Trademark Claims, including all of the three federal trademark claims on which Sun

4   bases federal subject matter jurisdiction.

5               2.      Sun has not stated a plausible claim for relief with respect to its
                        Trademark Claims because it has pleaded conclusory, inconsistent facts
6                       as to whether an affiliation and/or relationship exists between Sun and
                        greenBytes.
7

8         Sun's Amended Complaint is internally inconsistent as to whether there is some

9   measure of affiliation and/or relationship between Sun and greenBytes.  For purposes of its

10  Trademark Claims, Sun would have this Court believe that no affiliation or relationship exists.

11  Sun relies to a great extent on the following allegation:  "greenBytes' ownership of its federal

12  trademark registration for ZFS+ and its unauthorized use or continued intent to use falsely

13  suggests that its products and services are connected with, sponsored by, affiliated with, or

14  related to Sun, and constitute a false designation of origin in violation of § 43 of the Lanham

15  Act, 15 U.S.C. § 1125(a)."  FAC ¶ 68; *see also id.* at ¶¶ 71, 76, and 87.  These allegations can

16  only be read as stating that no such affiliation or relationship exists.

17        Contrary to those allegations, Sun separately alleges that there is some measure of

18  affiliation or relationship between it and greenBytes whereby greenBytes retains the ability to

19  use ZFS, create a related product, and then sell that product on the open market.  As alleged in

20  the Amended Complaint in paragraphs 2 and 3, Sun distributes ZFS pursuant to an "open

21  source" license, the CDDL, which permits others, including greenBytes, to download the

22  software, including its source code, and to make modifications to the source code itself.  As is

23  typical with open source license agreements, ZFS users are required under the CDDL to

24  commit to the public domain the modifications made to the ZFS source code itself.

25  greenBytes, however, is entitled pursuant to the express terms of the CDDL to provide

26  additional functionality to the ZFS code in discrete, proprietary files.[12]  By virtue of the

27

28  _____

[12]   A product that provides additional functionality to the ZFS code is known as a "larger work" under the terms
of the CDDL.  The larger work provision of the CDDL allows greenBytes to create a larger work "by combining

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1   CDDL, greenBytes is licensed to access and use the ZFS source code, and ultimately

2   greenBytes is free to retain and sell its product or "larger work" created in relation to ZFS.

3         The CDDL actively contemplates that there is a material and legally significant

4   relationship between Sun and the various entities developing and distributing ZFS, such as

5   greenBytes.  The CDDL provides expressly that in the event licensees wish to license the

6   executable form of "Covered Software" (in this case, ZFS) pursuant to license terms other than

7   the CDDL itself, the licensee is free to do so but only on condition that it "make[s] it

8   absolutely clear that any terms which differ from this License are offered by [the licensee]

9   alone, not by [Sun]."  CDDL ¶ 3.5.[13]  Likewise, Paragraph 3.4 of the CDDL permits a licensee

10  to provide "warranty, support, indemnity or liability obligations" in addition to other terms of

11  the CDDL to the licensee's own customers, but requires that if it does so, the licensee must

12  "make it absolutely clear that such" obligations are offered by "the [licensee] alone, and not on

13  behalf of [Sun]," and further provides that Sun is indemnified for any liability under those

14  additional obligations.  Implicit in each of those provisions is the fact that, without the

15  required disclaimer of a relationship between Sun and the alternative license terms, or the

16  additional obligations, as appropriate, those obligations would run to Sun as well as the

17  licensee.[14]

18        Some affiliation and/or relationship exists between greenBytes and Sun, and between

19  greenBytes' products and Sun's products.  Sun, therefore, cannot allege in conclusory fashion

20  that it is "false[]" or otherwise improper for greenBytes' to recognize that affiliation and/or

21  relationship through its use of the ZFS+ trademark.  Instead, Sun should be required to plead

22

23

---

24  [ZFS code] with other code not governed by the terms of this License and distribute the [l]arger [w]ork as a single product."  In distributing this larger work, greenBytes is only required to adhere to the terms of the CDDL for the

25  ZFS code, and not the "other code."

26  [13]   Pursuant to the CDDL ¶ 3.1, source code is required to be made available pursuant only to the terms of the CDDL itself.

27  [14]   Above and beyond the CDDL, the parties are connected by other agreements.  Sun alleges:  "greenBytes also entered into an original equipment manufacturer ('OEM') agreement and associated non-disclosure agreement ('NDA') that entitled greenBytes to purchase Sun products from one of Sun's Master Resellers and to incorporate

28  Sun's product into greenBytes' own OEM product for sale to end-users."  FAC ¶ 3.  Pursuant to these agreements, greenBytes is an authorized distributor of Sun's products.

MOTION TO DISMISS FIRST AMENDED COMPLAINT                    17
CASE NO. CV09-2745 RMW

1   the factual basis for its claim that greenBytes is wrong to recognize that existing affiliation

2   and/or relationship.

3          3.    Sun has not stated a plausible claim for relief with respect to its
                 Trademark Claims because it has pleaded conclusory facts based only
4                on information and belief as to whether greenBytes perpetrated fraud on
                 the <u>USPTO</u>.
5

6          Sun's federal claim for cancellation of the ZFS+ mark based on greenBytes' alleged

7   fraud on the USPTO is legally insufficient in several respects.  In support of the "Ninth Cause

8   of Action" in the Amended Complaint, Sun alleges that "greenBytes' [*sic*] knowingly and

9   willfully executed and filed a false declaration claiming exclusive rights to use the mark ZFS+

10  with the intent to induct the USPTO to act in reliance thereon resulting in the issuance of the

11  ZFS+ registration thereby committing fraud on the USPTO."  FAC ¶ 82.  This allegation is

12  made solely "[o]n information and belief," and Sun otherwise completely fails to set forth

13  additional facts related to this "false declaration," including the specific information that is the

14  basis for its belief.

15         This claim is in sum and substance a claim for fraud that is grounded in 15 U.S.C. §

16  1064, which permits the cancellation of a registration of a mark if that "registration was

17  obtained fraudulently."[15]  The heightened pleading standard of Rule 9(b) of the Federal Rules

18  of Civil Procedure – requiring particular, specific allegations of "the circumstances

19  constituting fraud or mistake" – applies to allegations of all claims and defenses of

20  "inequitable conduct" before the USPTO.  *Chiron Corp. v. Abbott Labs.*, 156 F.R.D. 219, 220

21  (N.D. Cal. 1994); *see also Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 178 (E.D.N.Y.

22  1988).  To plead fraud, Sun is required to allege "the time, place, and nature of the alleged

23  fraudulent activities," including the identification of documents provided to the USPTO, and

24  specific portions of those documents, that allegedly deceived the USPTO.  *Chiron Corp.*, 121

25

26

27

28  ----
    [15]   Sun's statutory citations in this claim are, at best, incomplete.  Sun cites exclusively to 15 U.S.C. § 1119,
    which empowers a federal court, *inter alia*, to cancel registered marks.  The statutory basis for asking a court to
    cancel a registration based on fraud, however, lies exclusively in 15 U.S.C. § 1064.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1   F.R.D. at 222 (holding "[i]f Abbot cannot specify what about Dr. Steimer's seven-page

2   declaration is deceptive, then Abbot may not allege that it is fraudulent").

3         Here, Sun's allegation referring to a "false declaration" with respect to greenBytes'

4   registration of the ZFS+ trademark, without more, fails to identify the specific documents and

5   portions of documents that allegedly deceived the USPTO into issuing the ZFS+ to

6   greenBytes.  Allegations of the "time, place, and nature of the fraudulent activities" are

7   completely absent from Sun's Amended Complaint.  These allegations do not suffice under the

8   heightened pleading standard of Rule 9(b).

9         This fraud-based claim is further undermined by the fact that Sun's sole allegation of

10  fraud is based on "information and belief," while failing to plead facts on which that belief is

11  based.  For claims of misrepresentation, allegations prefaced with the equivocation of

12  "information and belief" must be coupled with the pleading of "facts [on which] this belief is

13  formed" in order to meet the heightened pleading standard of Rule 9(b).  *Rubke v. Capitol*

14  *Bancorp, Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009) (affirming the dismissal of fraud-based

15  claims brought pursuant to the Securities Exchange Act for failure to plead the facts

16  underlying an allegation "based on information and belief"); *see also Glazer Capital Mgmt.*

17  *LP v. Magistri*, 549 F.3d 736, 741 (9th Cir. 2008) (fraud-based claims brought pursuant to a

18  rule promulgated pursuant to the Securities Exchange Act must "state with particularity all

19  facts on which" an "on information and belief" allegation is formed); *Universal Comms. Sys.,*

20  *Inc. v. Lycos, Inc.*, 478 F.3d 413, 426-27 (1st Cir. 2007) ("[w]here allegations of fraud are

21  explicitly . . . or implicitly based only on information and belief, the complaint must set forth

22  the source of the information and the reasons for the belief").

23        Sun cannot plead its allegations of fraud on "information and belief" and then hope it

24  develops a factual basis for those claims in discovery.  "A claim alleging fraud should be filed

25  only after a wrong is reasonably believed to have occurred; it should serve to seek redress for a

26  wrong, not to find one."  *Solarex Corp.*, 121 F.R.D. at 178.  Furthermore, greenBytes'

27  representations to the USPTO with respect to the registration of the ZFS+ are a matter of

28  public record, and, therefore, Sun should not need discovery to develop this claim.  Instead, by

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1  pleading on "information and belief," Sun signals that it is completely incapable of offering a

2  factual predicate for its claim.

3        The Ninth Cause of Action in the First Amended Complaint, which is predicated on an

4  allegation of fraud perpetrated on the USPTO, fails to properly alleged fraud as required by

5  Rule 9(b), and is further undermined by the fact that it is alleged based merely on "information

6  and belief."

B.     **Based on the failure to plead adequate federal trademark claims, this**
7         **Court lacks subject matter jurisdiction over this case.**
8

9        For the above-stated reasons, Sun has failed to state a claim with respect to its

10 Trademark Claims, including its federal trademark claims, specifically its Sixth, Ninth, and

11 Tenth "Cause[s] of Action."  Dismissal at this early stage of this litigation of the federal

12 trademark claims, which are the sole basis for this Court's federal subject matter jurisdiction,

13 requires dismissal of the entire case for lack of subject matter jurisdiction.  *Herman Family*

14 *Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001) ("where there is no

15 underlying original federal subject matter jurisdiction, the court has no authority to adjudicate

16 supplemental claims under § 1367.") (citing cases from other Courts of Appeals in

17 agreement); *see also Reyes v. Kelleberg*, No. C-09-01553-RMW, 2009 WL 2723743, *2

18 (N.D.Cal. Aug. 5, 2009).

C.     **Sun's Trade Secret Claims Are Not Properly the Subject of Supplemental**
19        **Jurisdiction.**

20            1.     The Trade Secret Claims and The Trademark Claims Do Not Share a
                     Common Nucleus of Operative Fact.
21

22        When subject matter jurisdiction is based solely on 28 U.S.C. § 1331, the question of

23 whether this Court has supplemental jurisdiction over state law claims is governed by 28

24 U.S.C. § 1367.  *See Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855 (9th Cir. 2004).  Section 1367

25 mandates that for a federal court to exercise proper supplemental jurisdiction over state law

26 claims – brought against either the same defendant or additional defendants – those claims

27 must "form part of the same case or controversy under Article III of the United States

28 Constitution" as the foundational claim supported by federal question jurisdiction.  Section

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1367(a).  The "same case or controversy" language has been interpreted as requiring the state

claims and the foundational federal claim to arise out of a common nucleus of operative fact.

*Summit Media LLC v. City of Los Angeles,* 530 F. Supp. 2d 1084, 1092-93 (C.D.Cal. 2008).

Here, there is no "common nucleus of operative fact" among the Trademark Claims

and the Trade Secret Claims.  Circumstantially, this is clear from the fact that Sun brought its

original Complaint in this matter without asserting any of the Trademark Claims.  But an

examination of the issues as presented by Sun's First Amended Complaint makes it plain that

the two issues – trade secret and trademark – have nothing to do with one another.  The

Trademark Claims surround and concern ***solely*** (1) greenBytes' registration of the ZFS+ mark,

and (2) Sun's alleged common law rights in the ZFS mark.  The operative facts are constrained

to the manner and method by which Sun used the term "ZFS" prior to the date of greenBytes'

application for the ZFS+ mark, October 31, 2007, and greenBytes' knowledge of that use at the

time it sought registration of its mark.

By contrast, the Trade Secret Claims concern entirely separate and discrete facts.

Those consist of (1) the parties' initial contacts concerning greenBytes' development of a de-

duplication process; (2) the negotiation of a nondisclosure agreement to govern the exchange

of confidential information between the parties; (3) greenBytes' communications with Sun

regarding its de-duplication process; and (4) Sun's use of that information, including its

development of its current de-duplication process.  All of these activities happened many

months after any of the operative facts concerning the Trademark Claims.  Although,

naturally, discovery will extend to matters somewhat outside those topics to the extent

relevant to issues that are presented by the Trade Secret Claims (*e.g.*, Sun's efforts, or lack

thereof, at developing de-duplication before talking to greenBytes, and information germane to

the interpretation and application of the terms of the applicable nondisclosure agreement),

whether greenBytes' registration of the ZFS+ mark was justified or not has nothing to do with

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1  whether Sun unlawfully used confidential information about de-duplication from

2  greenBytes.[16]

3         Because the two sets of claims have separate and distinct "nuclei" of operative fact,

4  they do not form a part of the same case or controversy as those terms are used in 28 U.S.C. §

5  1367(a) and therefore the Trade Secret Claims are not properly the subject of supplemental

6  jurisdiction.

7                 2.      Alternatively, the Trade Secret Claims Should Be Dismissed <u>Because</u>

8  <u>They Are Predominant.</u>

9         Even if the Court finds that the Trade Secret Claims and the Trademark Claims do

10  share a common nucleus of operative fact such that it is permissible to exercise supplemental

11  jurisdiction, the Trade Secret Claims should be dismissed pursuant to 28 U.S.C. § 1367(c)(2).

12  That provision reads, in relevant part:

13          The district court may decline to exercise supplemental jurisdiction over a
           claim under subsection (a) if...the claim substantially predominates over the
14          claim or claims over which the district court has original jurisdiction.

15  *See also San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998);

16  *Johnston v. Lindauer*, No. 02:07-cv-01280-GEB-EFB, 2009 WL 2058579, *1-2 (E.D. Cal.

17  July 14, 2009).  The supplemental jurisdiction statute expressly confers discretion upon this

18  Court in deciding whether to decline to exercise supplemental jurisdiction, and District Courts

19  enjoy broad discretion to sever state law claims where those claims predominate over the

20  asserted claims that give rise to federal jurisdiction.  *See San Pedro Hotel Co., Inc.*, 159 F.3d

21

22  _____
   [16]    Courts in intellectual property cases often hold that state law claims do not arise out of a common nucleus of

23  operative facts as the federal claim giving rise to subject matter jurisdiction.  *Highway Equip. Co. v. Feco, Ltd.*,
   469 F.3d 1027, 1038-39 (Fed. Cir. 2006) (collecting other intellectual property cases).  For example, state law

24  claims pertaining to the wrongful termination of a dealership agreement did not arise out of the same nucleus of
   operative facts as a federal patent claim when, *inter alia*, there is no overlap in time as to the relevant events. *Id.*

25  (holding that the relevant patent issued months after the termination of the dealership agreement).  Furthermore,
   there is no common nucleus of facts when state claims focus on product distribution by one party while the federal

26  claims focus on product manufacturing by the other party.  *Id.* (discussing a differentiation in "instrumentalities").
   The same applies here.  Sun's Trademark Claims focus on two marks, their use in commerce, the rights that attend

27  such use, and the priority of the rights, if any, enjoyed by each of the parties.  The Trade Secret Claims focus on
   different events, from a different time:  greenBytes' communications to Sun about de-duplication, and what Sun

28  did with that information.

MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. CV09-2745 RMW

22

at 478 (affirming a district court's finding that the state law claims predominate, despite the fact that the lower court failed to articulate any basis supporting that conclusion).  "If it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Johnston*, 2009 WL 2058579 at *1 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Where, as here, there is already pending a state court action (in the Rhode Island Superior Court) in which the parties have undertaken substantial litigation activities, and where there is no cognizable connection between the federal claims and the state claims, declining to exercise jurisdiction over the issues raised in the state court action is warranted.[17]

Of particular significance, this Court has found that state trade secret claims substantially predominate over patent claims.  *Taiwan Semiconductor Mfg. Co., Ltd. v. Semiconductor Mfg. International Corp.*, No. C-03-5761MMC, 2004 WL 5212448, *7-*8 (N.D. Cal. April 21, 2004).  In *Taiwan Semiconductor*, the plaintiffs brought claims for, *inter alia*, patent infringement of various integrated circuits that it designed, trade secret misappropriation in violation of California law and federal unfair competition and trade secret misappropriation claims.  *Id.* at *2.  After surviving the standard of supplemental jurisdiction provided for in 28 U.S.C. 1367(a), the Court found that the trade secret claims substantially predominated over the patent claims, despite the fact that "[t]he gravamen of plaintiffs' complaint is that defendants have engaged in wholesale looting of plaintiffs' intellectual property in order to create the foundation of defendants' semiconductor manufacturing business." *Id.* at *7.  In particular, the Court found that "the trade secret...claims are far more wide-ranging than the relatively unexceptional patent claims that provide the sole basis for this Court's original jurisdiction, to the extent that the 'tail' can be said to be 'wagging the dog.'" *Id.*  The Court thus declined to implement supplemental jurisdiction over plaintiffs' state law

---

[17]    Federal courts within the Ninth Circuit regularly exercise this discretion in favor of declining to exercise jurisdiction because state law claims predominate.  *See, e.g., San Pedro Hotel*, 159 F.3d at 478; *Org. for the Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1131 (S.D.Cal. 2005); *Johnston*, 2009 WL 2058579 at *2.

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

claims for trade secret misappropriation.  *Id.*  The issues in this case are entirely analogous.
The gravamen of this case is the alleged misappropriation of trade secrets by Sun.  But for
those issues, Sun would have consummated a settlement with respect to any trademark
concerns it might have had.  Sun's assertion of federal jurisdiction based on "relatively
unexceptional" trademark claims, which "provide the sole basis for this Court's original
jurisdiction."  Sun's Amended Complaint is a classic example of the tail wagging the dog.

>    3.    As a Further Alternative, the Trade Secret Claims Should Be Dismissed Based on Sun's Having Asserted the Trademark Claims Solely in an Effort to Secure What it Perceives to be a Favorable Forum.

This Court is also free to exercise its discretion in favor of declining jurisdiction over
the state law claims when a federal claim is included strictly for the purpose of obtaining
jurisdiction in the federal courts.  Beyond the reasons for declining jurisdiction expressly
delineated in § 1367(c), a catch-all provision allows this Court "in exceptional circumstances"
to decline jurisdiction for "other compelling reasons."  28 U.S.C. § 1364(c)(4).  Such an
exceptional circumstance and/or compelling reason is the inclusion of a federal claim merely
for the purposes of litigating state claims in a federal court.  *Brick Oven Rest.*, 406 F.Supp.2d
at 1131-32 (branding the inclusion of an ADA claim affording the exact same remedies as the
state law claims as "forum-shopping plain and simple" and/or "bootstrapp[ing]").
Discouraging the inclusion of such claims is "a legitimate goal of the federal courts" that
promotes basic notions of justice and comity.  *Id.*

The fact that Sun included the federal trademark claims solely to gain access to this
Court is patently obvious.  Sun was willing not to prosecute its alleged Trademark Claims at
the time it filed its original Complaint in this Court, because Sun believed – wrongfully –
diversity existed between it and greenBytes.  When Sun learned the error of its ways and was
faced with the dilemma of either pleading a claim giving rise to federal question jurisdiction
or heading to state court, Sun then amended its Complaint to add its Trademark Claims.
Moreover, Sun reached a full and complete settlement, resolving any and all outstanding
issues related to this trademark issue, only to renege on that agreement when its trademark
department was learned of the trade secret dispute.  Techentin Declaration at ¶ 6 and **Exhibit**

1  **F**.  Sun is now using that trademark dispute, which had already been resolved, for purposes of

2  litigating state claims in federal court.  A more transparent example of pleading a federal

3  claim strictly for the purpose of obtaining subject matter jurisdiction is difficult to imagine.

4  Accordingly 28 U.S.C. 1367(c)(4) affords this Court yet another means of declining

5  jurisdiction over the state law claims.

6  **IV.**    **Conclusion**

7        For all of the foregoing reasons, Defendant greenBytes, Inc., respectfully requests that

8  the Amended Complaint of Sun Microsystems, Inc. be dismissed in its entirety.

9  DATED:        August 28, 2009              GCA LAW PARTNERS LLP
                                              KIMBERLY A. DONOVAN
10

11                                           By:  ___/s/   Kimberly A. Donovan
12                                                Kimberly A. Donovan

13                                           Attorneys for Defendant
                                             greenBytes, Inc.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS FIRST AMENDED COMPLAINT            25
CASE NO. CV09-2745 RMW